UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| SARA LYNNE BRAY,<br><br>                       Plaintiff,<br><br>   v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>                       Defendant. | No.<br><br>COMPLAINT |

Plaintiff Sara Lynne Bray brings this action against Defendant Metropolitan Life Insurance Company ("MetLife") and alleges as follows:

### I.    PARTIES

1. Plaintiff Bray is, and at all relevant times was, a citizen of the United States and a resident of Kirkland, Washington, in this District.

2. Defendant MetLife is an insurance company with its principal executive offices located at 200 Park Avenue, New York, New York.

### II.    JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e) and (f).

COMPLAINT - 1

4. Venue over this action lies in this Court pursuant to 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1391(b)(2).

### III. FACTUAL ALLEGATIONS

**A.  Bray is covered under a disability insurance policy that MetLife issued through her former employer's employee welfare benefit plan.**

5. Prior to becoming disabled, Bray was employed as the Senior Human Resources Business Partner for Futurewei Technologies, Inc. ("Futurewei").

6. In connection with Bray's employment, Bray became a participant in the Futurewei Technologies, Inc. Health and Welfare Plan (the "Plan"), which is an employee welfare benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1101, *et seq.*, ("ERISA").

7. Through the Plan, Bray became covered under a group long-term disability ("LTD") insurance policy insured by MetLife.

8. MetLife is the Claims Administrator and Plan Administrator with respect to LTD claims under the Plan and is a fiduciary within the meaning of 29 U.S.C. §§ 1002(21) and 1102.

**B.  Ms. Bray became disabled following an autoimmune disease diagnosis in 2019.**

9. Ms. Bray's responsibilities as Futurewei's Senior Human Resources Business Partner included human resources management, recruiting, management coaching, employee relations, and maintaining current knowledge of legal and regulatory trends. The position imposed substantial mental, social, and organizational demands. It required excellent judgment, conflict management skills, communication skills, analytical skills, organization, and project management.

10. Prior to becoming disabled as alleged herein, Ms. Bray performed these duties in exemplary fashion despite suffering chronic migraine headaches for approximately 20 years.

11. Beginning in early 2019, Ms. Bray's migraine symptoms intensified. She began experiencing new migraine symptoms that were much more impactful, including crippling fatigue and cognitive difficulties.

12. Alarmed, Ms. Bray consulted physicians who diagnosed her with autoimmune conditions including undifferentiated connective tissue disease (a/k/a "CREST" syndrome).

13. Ms. Bray has been advised her condition is incurable and can have potentially fatal complications.

14. Since receiving her autoimmune diagnosis in 2019, Ms. Bray's migraines can last for multiple days, inflicting nausea and vomiting, and requiring her to isolate in a dark room.

15. In addition to her exacerbated migraines, Ms. Bray's symptoms include fatigue, dizziness, and pain.

16. Ms. Bray has been unable to perform her job duties due to her symptoms since approximately August 7, 2019.

C. **MetLife determined Ms. Bray is disabled and began paying LTD benefits but subsequently terminated those benefits without evidence of recovery.**

17. Ms. Bray made a claim under the MetLife insurance policy issued through the Plan on or about November 11, 2019.

18. MetLife's physician consultant determined Ms. Bray's symptoms precluded her from working in any capacity.

19. MetLife approved Ms. Bray's LTD claim on or about January 13, 2020, and began paying benefits.

COMPLAINT - 3

20. MetLife subsequently assisted Ms. Bray in applying for and obtaining Social Security Disability ("SSD") benefits.

21. Ms. Bray's SSD award benefits MetLife by acting as an offset that reduced the amount of LTD benefits MetLife paid to Ms. Bray.

22. MetLife received a supplemental physician's report on or about February 4, 2021, indicating there was no evidence of significant improvement in Ms. Bray's condition.

23. MetLife nevertheless terminated Ms. Bray's LTD claim on or about February 23, 2021.

24. MetLife's termination of Ms. Bray's LTD claim relied on evidence that Ms. Bray had undergone a successful mastectomy for treatment of a cancer diagnosis unrelated to her disability.

**D.   MetLife failed to process Ms. Bray's administrative appeal in compliance with the Plan and ERISA.**

25. Ms. Bray appealed MetLife's termination of her benefits through the Plan's internal administrative procedures.

26. By letter and documentation submitted August 19, 2021, Ms. Bray identified the following deficiencies in MetLife's termination of her benefits:

    a. MetLife ignored its own physician consultants' determination that her symptoms are disabling and that she has not recovered;

    b. MetLife ignored the Social Security Administration's determination that she is disabled;

    c. MetLife ignored the opinions of her treating physicians regarding her symptoms' disabling impact;

    d.   MetLife ignored the essential functions of Ms. Bray's pre-disability employment including her position's social, organizational, and mental demands; and

    e.   MetLife ignored the opinions of the surgeon who performed Ms. Bray's mastectomy that her recovery from that procedure was irrelevant to her disabling conditions.

27.   Ms. Bray's August 19, 2021 correspondence requested MetLife reinstate her benefits or disclose its basis to dispute the evidence establishing her disability as required by ERISA, 29 C.F.R. § 2560.503-1(j).

28.   On October 18, 2021, MetLife informed Ms. Bray that it had reviewed her appeal and upheld its prior decision, but indicated that it intended to perform unspecified further review of the claim. MetLife did not disclose its basis to dispute the evidence of Ms. Bray's disability, in violation of ERISA, 29 C.F.R. § 2560.503-1(j).

29.   The same day, Ms. Bray advised MetLife that its violations of ERISA and the Plan entitled her to proceed immediately to judicial review under 29 C.F.R. § 2560.503-1(l), and requested that MetLife issue a proper notice of adverse benefit determination containing the information required under ERISA, 29 C.F.R. § 2560.503-1(j), to assist the Court in reviewing MetLife's decision.

30.   As of the date of filing this Complaint, MetLife has not:

    a.   explained its basis for disputing the evidence of disability provided with Ms. Bray's appeal;

    b.   provided an adverse benefit determination notice that complies with ERISA, 29 C.F.R. § 2560.503-1(j);

      c.    stated the date it will provide a compliant adverse benefit determination notice; or

      d.    identified extenuating circumstances that would justify delay in providing a compliant adverse benefit determination notice.

**E.    MetLife's refusal to reinstate Ms. Bray's benefits or timely resolve her appeal harms Ms. Bray.**

31.    MetLife's LTD insurance policy was issued through the Plan and is governed by ERISA.

32.    ERISA guarantees Ms. Bray a full, fair, and prompt investigation of her LTD claim, including her appeal of MetLife's termination of her claim.

33.    Ms. Bray is not currently working and has not worked for pay since becoming disabled.

34.    MetLife's termination of Ms. Bray's LTD benefits deprived Ms. Bray and her family of income they counted on to replace her wages.

35.    Ms. Bray's family has been forced to live off of cash savings, withdraw funds from retirement accounts, limit spending, and delay large purchases.

36.    MetLife's failure to timely resolve Ms. Bray's appeal exacerbates this harm by frustrating Ms. Bray's receipt of disability benefits she earned through her employment.

**F.    Ms. Bray's claim was deemed denied through MetLife's violations of ERISA and she has exhausted her administrative remedies.**

37.    By its conduct alleged throughout this Complaint, MetLife violated ERISA's mandate for full, fair, and prompt review of benefit claim denials, including, among other things:

    a. Failing to complete its review of Ms. Bray's appeal within 45 days, in violation of the Plan and ERISA, 29 C.F.R. § 2560.503-1(i)(3);

    b. Refusing to provide a notice of adverse benefit determination containing the information required by the Plan and ERISA, 29 C.F.R. § 2560.503-1(j);

    c. Failing to disclose its basis for disputing Ms. Bray's disability and otherwise failing to engage in a meaningful dialogue about the claim, in violation of ERISA, *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997);

    d. Arbitrarily refusing to credit the opinions of Ms. Bray's treating medical providers, in violation of ERISA, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 1972, 155 L. Ed. 2d 1034 (2003);

    e. Failing to provide a basis to dispute the disability determination of the Social Security Administration in violation of ERISA, 29 C.F.R. § 2560.503-1(j)(6)(i)(C); and

    f. Failing to provide a basis to dispute the determinations of its own physician consultants that Ms. Bray is disabled in violation of ERISA, 29 C.F.R. § 2560.503-1(j)(6)(i)(B).

38. Ms. Bray's appeal is deemed denied through the foregoing violations of ERISA and the Plan.

39. Ms. Bray exhausted her administrative remedies with respect to her LTD claim.

IV.     CAUSES OF ACTION

COUNT I
CLAIM FOR LTD BENEFITS

40.     Ms. Bray incorporates the foregoing paragraphs by reference and restates them as if fully set forth herein.

41.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits Ms. Bray to bring an action to recover her LTD benefits and clarify her right to future benefits.

42.     As alleged throughout this Complaint, Ms. Bray was entitled to benefits under the terms of the Plan and the MetLife insurance policy.

43.     As a result of the conduct alleged throughout this Complaint, Ms. Bray suffered actual harm, was denied benefits to which she was entitled under the Plan, was deprived of the legal protections guaranteeing her right to full and fair review of her claim, and incurred attorneys' fees and costs.

COUNT II
BRACH OF FIDUCIARY DUTY AND INJUNCTIVE RELIEF

44.     Ms. Bray incorporates the foregoing paragraphs by reference and restates them as if fully set forth herein.

45.     As alleged throughout this Complaint, MetLife violated the terms of the Plan, the full and fair review provisions of ERISA § 503, 29 U.S.C. § 1133, and ERISA's implementing regulation, 29 C.F.R. 2560.503-1.

46.     MetLife's conduct as alleged throughout this Complaint breached MetLife's fiduciary duties to Ms. Bray.

47. ERISA, 29 U.S.C. § 1132(a)(3), permits Ms. Bray to seek an injunction restraining violations of ERISA or the Plan, or to obtain other appropriate equitable relief to redress violations of ERISA or the Plan.

48. Ms. Bray has been advised that her autoimmune condition is incurable. Her disability is of indefinite duration. Absent meaningful declaratory and injunctive relief, Ms. Bray remains at risk of future violations of her rights under ERISA and the Plan with respect to her ongoing benefit claim and future benefit disputes.

49. Accordingly, Ms. Bray requests the Court declare that MetLife's misconduct alleged throughout this Complaint violates the Plan and ERISA and enter an injunction compelling MetLife to comply with the Plan and ERISA. While Ms. Bray is not required to specify the contours of requested injunctive relief at the pleading stage, such relief should include, at minimum, corrective discipline and training, and the implementation of new policies and procedures, sufficient to prevent recurrence of the misconduct occurring in the handling of this claim.

50. Ms. Bray further requests any additional and further equitable relief the Court deems warranted to redress the harm inflicted by MetLife's misconduct.

### V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Entry of judgment in favor of Plaintiff and against Defendant on Plaintiff's claims;

B. An order directing that Defendant pay Plaintiff all benefits due under the Plan;

C. An order declaring Plaintiff's right to benefits under the terms of the Plan, and clarifying her right to future benefits;

D.	Declaratory and injunctive relief restraining MetLife from violating the Plan and ERISA in the manner alleged herein;

E.	An award of Plaintiff's attorney's fees and costs pursuant to 29 U.S.C. § 1132(g); and

F.	All such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED October 26, 2021.

RUIZ & SMART PLLC


By *s/ McKean J. Evans*
McKean J. Evans, WSBA #52750


By *s/ Isaac Ruiz*
Isaac Ruiz, WSBA #35237

1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel: 206-203-9100
Fax: 206-785-1702
mevans@ruizandsmart.com
iruiz@ruizandsmart.com

**Attorneys for Plaintiff Bray**